927 So.2d 135 (2006)
FLORIDA HEMATOLOGY & ONCOLOGY, etc., et al., Appellant/Cross-Appellees,
v.
Rambabu TUMMALA, M.D., et al., Appellee/Cross-Appellant.
No. 5D05-1950.
District Court of Appeal of Florida, Fifth District.
April 21, 2006.
*136 H. Gregory McNeill of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for Appellant/Cross-Appellee.
Christopher V. Carlyle, Shannon McLin Carlyle and Gilbert S. Goshorn, Jr., of The Carlyle Appellate Law Firm, The Villages, for Appellee/Cross-Appellant.
LAWSON, J.
Florida Hematology & Oncology Specialists, P.A., Lake County Oncology & Hematology, P.A., and Roy M. Ambinder, M.D., (collectively "Appellants"), appeal an order granting in part and denying in part their motion for temporary injunction against Rambabu Tummala, M.D., ("Tummala"). We affirm.
The material facts are not in dispute. Tummala is board certified in hematology *137 and oncology. In November 1996, he was hired by Appellants to provide medical care to their patients in Lake County. Prior to this employment, Tummala had no personal or business-related connections in the Lake County community. Tummala signed an employment agreement with the Appellants that contained the following restrictive covenant:
14. Covenant Not to Compete: Employee shall not, during the Employee's employment with the Corporation and for an additional period of two (2) years from and after the termination of the Employee's employment with the Corporation for any reasons engage, directly or indirectly, in the practice of medicine within an area comprised of a fifteen (15) mile radius [of] any office of the Corporation. The parties further acknowledge that the above restrictions with respect to duration and geographic limitation are reasonable, and that the Corporation would suffer irreparable injury as a result of the breach thereof by the Employee. . . .
In late 2003, Tummala became concerned about some of his employers' billing practices. He voiced the concerns, and in early 2004 discussed leaving the practice when his concerns were not resolved to his satisfaction. On April 8, 2004, the Appellants terminated Tummala's employment without cause, as permitted under the parties' agreement.
After his termination, Tummala immediately opened an office within 15 miles of one of the corporations' seven Central Florida offices. In his new practice, however, Tummala took extraordinary measures to assure that he did not accept any of Appellants' former patients.[1] Despite Tummala's diligence in avoiding taking patients from his old employer, Appellants claim that they suffered a significant drop in new patients being referred from other area physicians.[2] Accordingly, they filed suit to enforce the restrictive covenant. Tummala also sued the Appellants alleging, inter alia, that they materially breached the employment agreement, and sought a declaratory judgment that the covenant not to compete was unenforceable as a matter of law and that he was eligible to practice medicine in Lake County.
In Florida, the enforceability of restrictive covenants is controlled in large part by section 542.335, Florida Statutes (2004). Under this statute, a restrictive covenant is not enforceable unless supported by a "legitimate business interest." If the party seeking to enforce the restrictive covenant pleads and proves a "legitimate business interest," it must also then demonstrate that the "contractually specified restraint is reasonably necessary to protect" its identified business interest.
With respect to patients of a medical practice, the statute expressly defines "legitimate *138 business interest" to include only those "specific prospective or existing" patients with whom the party has a "substantial relationship." See also University of Florida, Bd. of Trustees v. Sanal, 837 So.2d 512, 516 (Fla. 1st DCA 2003) ("we hold that, to qualify as a `legitimate business interest' pursuant to section 542.335(1)(b)3, a `relationship' with a `prospective patient' must be, in addition to `substantial,' one with a particular, identifiable, individual").
In this case, Appellants alleged three business interests: (1) existing patients; (2) exclusive contracts with local hospitals; and (3) referring physicians. Although Appellants' existing patients qualify as a "legitimate business interest," the evidence was clear that the restrictive covenant was not reasonably necessary to protect this interest.[3]
With respect to the alleged interest of "exclusive contracts" with local hospitals, we find that Appellants did not meet their burden of establishing any "legitimate business interest" to be protected. In fact, it is almost impossible to understand the nature of this alleged interest from either the record below or the briefs on appeal. Appellants claim to have entered "exclusive contracts" with two area hospitals "such that only doctors associated with . . . [Appellants] are permitted to practice oncology and hematology" in those facilities. However, they also explain that the "exclusive provisions" of these third-party contracts "do not preclude other unaffiliated oncologists from admitting patients" into the facilities. They further state that at least one of these hospitals "has oncologists working in its hospital who are not affiliated with . . . [Appellants]." It is also clear from the evidence that these hospitals have granted other oncologists and hematologist unaffiliated with Appellants "hospital privileges" allowing them to treat their admitted patients while hospitalized. Obviously, it would have been impossible for the trial court to assess the extent to which enforcement of the covenant was necessary to protect this alleged business interest when it could not reasonably be expected to understand the nature of the claimed interest given the confusing and contradictory evidence presented by Appellants. As such, we find no error in the trial court's failure to address this "interest" in its written order.
The last alleged interest, however, is admittedly problematic. On one hand, the evidence was clear that Appellants (and most other medical specialists) receive the significant share of their new patients from referring physicians. They expend effort, money and energy to cultivate referral relationships. And, it was a requirement of Tummala's employment that he develop these referral relationships for the benefit of his employer. Because referring physicians are the major source of new business for a specialist's medical practice, they are perhaps Appellants' most crucial "business interest." Therefore, Appellants make a compelling argument that the law should recognize them as a "legitimate business interest." The problem, however, is the express language of the statute.
*139 What referring physicians supply is a stream of unidentified prospective patients with whom Appellants had no prior relationship. Therefore, to accept referring physicians as a statutory "legitimate business interest," would completely circumvent the clear statutory directive that "prospective patients" are not to be recognized as such. The trial court correctly found that: "[A]s stated in Sanal, to qualify as a `legitimate business interest,' a `relationship' with a `prospective patient' must be substantial and one with a specific, identifiable individual and the lack of such a relationship with a patient does not become a legitimate business interest simply by virtue of being referred by a physician." Sanal, 837 So.2d at 515-16. We see no way to recognize referring physicians as a legitimate business interest and still give effect to the plain language of the statute.[4]
In addition, it is not clear that Appellants could establish the reasonable necessity of enforcing the restrictive covenant even if referring physicians were found to be a legitimate business interest. The referring physicians called as witnesses at the hearing all testified that they make their referrals based upon their assessment of the individual doctor to whom they direct their patients. They do not refer to a "business" or a "practice." Accordingly, they previously sent patients to Appellants' office only because that is where Dr. Tummala practiced. Now that he is gone, they testified that they would no longer refer their patients to Appellants' office even if Dr. Tummala no longer practiced anywhere in Central Florida.[5]
We agree with the trial court that Appellants failed to plead and prove a legitimate business interest recognized by the statute, and affirm.
AFFIRMED.
ORFINGER and TORPY, JJ., concur.
NOTES
[1] Tummala did not solicit any of Appellants' existing or former patients and refused to accept the request for treatment from a number of the Appellants' existing patients who wanted to continue receiving Tummala's care. He notified all potential referring physicians that he would not accept any of Appellants' patients, and placed an advertisement in the local newspaper announcing to the public that he would not accept Appellants' patients in his new practice. Finally, Tummala's patient information forms included an inquiry as to whether the individual had been treated by Appellants. Tummala only accepted patients who expressly indicated on the form that they had never been treated by Appellants.
[2] Interestingly, despite the alleged dramatic decrease in new business, the quarterly bonus received by each doctor employed by the corporate Appellants increased from $324,000 during the last quarter of Tummala's employment to $1,082,000 per physician in the quarter immediately after Tummala's departure.
[3] In addition, Tummala agreed with, and the court entered, a temporary injunction prohibiting him from treating any of Appellants' existing or former patients. See § 542.335(1)(c), Fla. Stat. (2004) ("If a contractually-specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests.").
[4] We recognize that this holding and the First District's opinion in Sanal appear to conflict with Southernmost Foot and Ankle Specialists, P.A. v. Torregrosa, 891 So.2d 591, 593 (Fla. 3d DCA 2004), in which the Third District upheld a trial judge's finding that Southernmost had legitimate business interests with regard to "its patient base, referral doctors, specific prospective and existing patients, and patient goodwill." (emphasis added).
[5] Because the trial judge resolved the matter based on the same threshold legal conclusion that we reach here, i.e., that referring physicians do not constitute a legitimate business interest under section 542.335(1)(b)3, we do not reach the statutory defenses raised by Tummala at the hearing.