PER CURIAM.
‘ Carla Hiles (“Hiles”) appeals the trial court’s order granting the motion for temporary injunction filed by Americare Home Therapy, Inc., d/b/a Americare Home Health (“Americare”). This injunction was sought after Hiles resigned from Ameri-care and started working for Halifax Health Services, Inc., d/b/a Doctors’ Choice (“Doctors’ Choice”), Americare’s direct competitor. Before leaving, Hiles Sent'multiple e-mails from her Americare work e-m'ail to her personal e-mail account. These documents included information pertaining to Americare’s referral sources and its patients. The trial court granted Americare’s motion, finding that the restrictive covenants set forth in Hiles’s employment agreement were supported' by legitimate business interests, namely “Am-ericare’s valuable business information, substantial relationships and good will with business partners, referral sources and patients.”
Hiles argues that the referral sources do not constitute a legitimate business interest under section 542.335, Florida Statutes (2014), based on this court’s decision-in Florida Hematology & Oncology v. Tummala, 927 So.2d 135 (Fla. 5th DCA 2006). She, therefore, contends that the restrictive covenant preventing her from soliciting these referral sources is void and unenforceable. Additionally, she argues that the non-compete provision enforces restrictions that are not reasonably necessary to protect valid legitimate business interests, specifically contending that there was no showing that it was reasonably necessary to protect “Americare’s valuable business information.” She also asserts the injunction fails to comply with the strict requirements of Florida Rule of Civil Procedure 1.610(c) and the trial court ■ erred in setting the injunction bond without hearing any evidence as to an appropriate bond amount. As to the bond issue, we affirm without further discussion.
The material facts are not in dispute. Hiles began work for Americare in November 2011 as a home health liaison in Volusia County. Americare operates throughout central and northeast Florida providing in-home patient care services for various medical fields, including nursing, physical therapy, occupational therapy, medical social work, speech therapy, and home health aids.
On November 7, 2011, as part of her acceptance of employment'with Americare, Hiles executed and entered into a Non-Compete, Non-Solicitation, and Nondisclosure Agreement (the “Non-Compete”). In the Non-Compete, Americare declared that its “business depends on referral sources” and described Hiles’s role as one forging relationships with such referral sources: “As a Home Health Liaison, [Hi-les] markets and provides Americare’s home health services to referral sources, including health facilities and physicians.” “In the performance of [her] duties,” the Non-Compete represents that she “will learn confidential information relating to [Americare]’s business and develop relationships with existing and potential refer *451 ral sources.” Hiles agreed in pertinent part:
Trade Secrets. Employee will have access to and become familiar with confidential and/or trade secret information concerning the business and affairs of the Company, including information concerning Company’s customer base, pricing information and methods, training and operational procedures; advertising, marketing, and sales information; financial information, and other data concepts, strategies, methods, procedures, and trade secrets as defined in Florida Statutes' Section 688.002, used by the Company- in carrying out its business (collectively the “Information”): The parties acknowledge and agree that the unauthorized disclosure of such information by the Employee during or after his/her employment the Company would cause irreparable injury to the Company.
Nondisclosure of Information. The Employee shall not during employment and for a period of 5 years after termination of employment, directly or indirectly, reveal, report, publish, or disclose any trade secret information, or allow any such trade secret information to be disclosed, to any person or entity, for any reason or purpose whatsoever, without the express written [conjsent of the Company.
Non-Competition. Upon the termination of Employee’s employment relationship with Americare and for a period of 12 (twelve) months thereafter, irrespective of the time, manner, or reason for such termination, Employee shall ■ not, without the express written consent of the Company, directly or indirectly consult with, render services to, work for, or otherwise participate or attempt to participate in any manner in a business or entity which provides, markets or promotes home health services in the territory in which Employee worked while employed by Company, as such activities would necessarily harm the protectable business interests of the Company. “Territory” means within 50 miles of any health facility or physician to whom Employee marketed or promoted Americare’s home health services. The restrictions in this provision are necessary to allow the Company sufficient time to protect its legitimate interest business relationships established during the course and scope of Employee’s employment with Americare.
Non-Solicitation. Upon the termination of. the Employees employment relationship with the Company and for a period of 12 months thereafter, Employee shall not without prior written consent of the Company directly or indirectly: . '
(a) solicit or encourage any employee, contractor, subcontractor, or of [sic] Americare to leave the service of Company, or
(b) market or promote home health services to any health facility, physician, or referral source to whom any Employee of the Company marketed or promoted Americare’s home health services during the final 12 months of Employee’s employment with Ameri-care Home Health.
Hiles was approached by Doctors’ Choice regarding an employment opportunity in 2014. On October 2, 2014, Hiles transferred documents from her- work email to her personal e-mail account. The next day, om October. 8, 2014, Hiles tendered a resignation letter to Americare. She continued sending e-mails to her personal account on that day. On October 6, 2014, a representative of Americare told Hiles that her employment would end that day. That afternoon, she began working *452 for Doctors’ Choice. Both before and after her employment ended with Americare on October 6, Hiles continued to e-mail data from Americare’s business computers to her personal e-mail account.
Americare filed a multi-count complaint against Hiles, which included a count for a temporary injunction to prohibit Hiles from violating the restrictive covenants. An evidentiary hearing was conducted over the course of two days regarding Ameri-care’s request for a temporary injunction. At the conclusion, the trial judge orally stated he would grant a temporary injunction. In doing so, he said the case of Tummala was factually distinguishable. The trial court entered the temporary injunction, which we now review, containing the following findings of fact and conclusions of law:
7. Hiles is violating the restrictive covenants in her agreement with Americare by obtaining confidential information improperly taken from Americare, including confidential patient information, confidential customer and referral source lists, soliciting business from Ameri-care’s business partners/referral sources, and working for a direct competitor of Americare ... in the prohibited territory described within the agreement.
[[Image here]]
10. Hiles had access to and obtained Americare’s confidential/trade secrets, including its computer database which included patients and referral source information and medical histories of Am-ericare’s patients.
11. As an account executive of Ameri-care, Hiles was Americare’s primary contact with certain of its clients and business partners/referral sources in the Territory. Her sole responsibility was to establish, maintain, and grow relationships with decision makers within the business partners/referral source associations with which Americare partnered to provide medical care to patients.
12. As such, Hiles learned the identity of existing patients to whom Americare was providing service, as well as the identity of the business partners/referral sources with whom Americare worked to provide medical care to such patients.
13. The Subject Covenants are supported by legitimate business interests, including, but not limited to, Americare’s valuable business information, substantial relationships and good will with business partners, referral sources and patients.
14. The Subject Covenants in the Agreement are necessary to protect the legitimate business interests identified above justifying the restrictions.
15. The Subject Covenants in the Agreement are also reasonable in scope and duration under Florida law. The Subject Covenants in the Agreement are limited in both temporal and geographical scope.
16. In sum, the Subject Covenants on Hiles’ solicitation, competition, and use of confidential information are enforceable under Florida Law.
17. Hiles sent Americare’s confidential business information and confidential patient information to her personal email address.
18. Moreover, even after her resignation from Americare, Hiles continued to access Americare’s computer and email confidential business information and confidential patient information to her personal email account.
19. Following her employment with Americare, Hiles continued to contact the doctors and clinicians that she developed as business partners/referral *453 sources for Americare in order to generate revenue for Halifax.
20. Hiles has thus infringed on Ameri-care’s legitimate business interests.
21. As a result of Hiles’ actions, Ameri-care stands to suffer, and will continue to suffer, irreparable harm for which there is no adequate remedy of law.
[[Image here]]
24. Based on the foregoing, Americare has demonstrated a clearly ascertainable right needing protection and also is likely to succeed on the merits.
WHEREFORE, it is hereby ORDERED:
1. Americare is GRANTED temporary injunctive relief until the trial of this matter or until otherwise ordered by this Court. This Court enjoins and restrains Hiles [from] directly or indirectly[:]
i. accessing, copying, transmitting, or using any information taken by Hiles from Americare, either prior to her resignation from Americare or since;
ii. using, disclosing, misusing, or further converting in any matter or any form, any of Americare’s business information, including all electronically stored information;
iii. destroying, damaging, or otherwise disposing of Americare’s business information, including all electronically stored information;
iv. hiding or destroying any documents or other evidence, including all electronically stored information, in any way concerning the allegations of the Amended Complaint;
v. tort[i]ously interfering with Am-ericare’s contractual relationships, including any of Americare’s current or former employees, clients, business partners, or referral sources;
vi. providing any services or information to, working for, advising, or being connected to or receiving any remuneration from, connected to, or receiving any remuneration from Halifax or any other competitor of Americare providing services in the Territory;
vii. refusing or failing to return to Americare its business information and materials, including all electronically stored information that Hiles took from Americare in a manner that will preserve the allegations in the Amended Complaint; and
viii. otherwise violating any of the restrictive covenants contained in the Agreement.
2. Americare shall post a bond with surety or cash, with the Clerk of the Court in the amount of $5,200.00, upon which this injunction shall be in full force and effect.
We do not believe that Tummala is distinguishable from the instant case. The decision in Tummala is founded on this court’s interpretation and application of section 542.335, Florida Statutes, which governs, “in large part,” the enforceability of restrictive covenants. 927 So.2d at 137. This statute, which has not been amended since its enactment, provides in pertinent part that “[t]he person' seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant.” § 542.335(l)(b), Fla. Stat. (2014). Once the moving party has established a prima facie case that the restriction is reasonably necessary to protect a legitimate business interest, the opposing party then has the burden of establishing that the restraint is “overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests.” § 542.335(l)(c), Fla. Stat. (2014). If a re *454 straint is overbroad, the court “shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests.” Id.
The statute does not specifically define “legitimate business interests,” but it does provide a numerical list that includes, “but is not limited to,” five specific items that qualify as ■ legitimate business interests. § 542.335(l)(b), Fla. Stat. (2014). In Tum-mala, as in the instant case, the listed legitimate business interest that was advanced is “[Substantial relationships with specific prospective or existing customers, patients, or clients.” Id.; see also Tummala, 927 So.2d at 137-38. In Tummala, this court held that referring physicians did not qualify as a legitimate business interest under the statute, explaining:
What referring physicians supply is a stream of unidentified prospective patients with whom Appellants had no pri- or relationship. Therefore, to accept referring physicians as a statutory “legitimate business interest,” would completely circumvent the clear statutory directive that “prospective patients” are not to be recognized as such. The trial court correctly found that: “[A]s stated in Sanal, to qualify as a ‘legitimate business interest,’ a ‘relationship’ with a ‘prospective patient’ must be substantial and one with a specific, identifiable individual and the lack of such a relationship with a patient" does not bécome a legitimate business interest simply by virtue of being referred by a physician.” Sanal, 837 So.2d at 515-16. We see no way to recognize referring physicians as a legitimate business interest and still give effect to the plain language of the statute.
Tummala, 927 So.2d at 139 (footnote omitted) (citing Univ. of Fla., Bd. of Trustees v. Sanal, 837 So.2d 512, 516-17 (Fla. 1st DCA 2003)).
Thus, pursuant to Tummala, unidentified prospective patients, and correspondingly referral physicians, do not qualify as legitimate business interests for the purpose of enforcing restrictive covenants. Americare cannot surmount this holding. The referral sources here, as with the referring physicians in Tummala, supplied “a stream of unidentified prospective patients” with whom Americare had no prior relationship. Therefore, to accept referral sources here as a statutorily-protected legitimate business interest would completely circumvent the statutory directive that prospective patients are not to be recognized as a legitimate business interest. Americare’s “clients” or “customers” are the patients that it treats. The referral sources merely act as a conduit to supply these unidentified prospective patients to the home health care agencies, one of which is Americare. Accordingly, the trial court erred in holding that the referral sources were a legitimate business interest.
We acknowledge that our decision in the instant case and our decision in Tummala conflict with the recent decision from the Fourth District Court in Infinity Home Care, L.L.C. v. Amedisys Holding, LLC, 180 So.3d 1060, 40 Fla. L. Weekly D2589, 2015 WL 7292837 (Fla. 4th DCA Nov. 18, 2015) (holding that referral sources may be a legitimate business interest under section 543.335 and certifying conflict with Tummala).
The trial court also erred in holding that the temporary injunction was reasonably necessary to protect “Americare’s valuable business information.” Section 542.335(l)(b)2. does recognize as a legitimate business interest “[vjaluable confidential business or professional information that otherwise does not qualify as trade secrets.” However, there is no evidence that it is reasonably necessary to *455 enforce the Non-Compete restrictive covenant solely due to Hiles’s possession of the e-mails and attached documents, which she had already seen during her employment with Americare and only have any value to her due to the reference to referral sources. While the temporary injunction recognizes that she obtained this information, there is no evidence, that she used this information to compete with Ameri-care. Thus the record is devoid of any showing that it was reasonably necessary to protect the information Hiles obtained that would justify the Non-Compete restrictive covenant.
We conclude that Americare was not entitled to the entry of'an injunction barring Hiles from “interfering with ... Am-ericare’s ... referral sources” or “providing any services or information to, working for, advising, or being connected .to or receiving any remuneration from, connected to, or. receiving any remuneration from Halifax or any other competitor of Ameri-care providing services in the Territory.”
Finally, Hiles argues that the temporary injunction must be reversed because it fails to comply with the clear and strict terms in Florida Rule of Civil Procedure 1.610(c). She takes issue with two provisions: 1) subsection, l.v. of the temporary injunction; and 2) the “catch-all” provision of subsection l.viii., which enjoins and restrains Hiles from “otherwise violating any of the restrictive covenants contained in the Agreement.” Specifically, Hiles contends that these provisions fail to comply with the requirement that a temporary injunction must “describe in reasonable detail the act or acts restrained without reference to a pleading or other document_” Fla. R. Civ. P. 1.610(c); see also Yardley v. Albu, 826 So.2d 467, 470 (Fla. 6th DCA 2002).
While subsection l.v. can fairly be interpreted as restraining Hiles from soliciting any of Americare’s current or former employees, clients, business partners, or referral sources, subsection l.viii. runs'afoul of the prescription in Rule 1.610(c). Thus, this catch-all provision that enjoins Hiles from “otherwise violating any of the restrictive'covenants contained in the Agreement” must be stricken.
In sum, we affirm in part and reverse in part the trial court’s order granting the temporary injunction and remand this case to the trial court with directions to modify and narrow the terms of the injunction consistent with this opinion. Specifically, paragraph seven of the injunction — stating that “Hiles is violating the restrictive covenants in. her agreement with Americare by- ,.. soliciting business from Americare’s business partners/réferral sources” — must be stricken; subsection Tv. must be narrowed to remove the references to referral sources; subsection l.vi. prohibiting Hiles from competing with Americare must be stricken entirely (as not reasonably necessary to support a legitimate business interest); and subsection l.viii. must be stricken as violative of Florida Rule of Civil Procedure 1.610(c).
We certify conflict with Infinity Home Care, L.L.C. v. Amedisys Holding, LLC, 180 So.3d 1060, 40 Fla. L. Weekly D2589, 2015 WL 7292837 (Fla. 4th DCA Nov. 18, 2015) (certifying conflict with Fla. Hematology & Oncology v. Tummala, 927 So.2d 135 (Fla. 5th DCA 2006)).
AFFIRMED in part; REVERSED in part; REMANDED; CONFLICT CERTIFIED.
PALMER and COHEN, JJ., concur.
SAWAYA, J., concurs with opinion.