# Supreme Court of Florida

_____

No. SC16-28
_____

**ELIZABETH WHITE,**
Petitioner,

vs.

**MEDERI CARETENDERS VISITING SERVICES OF SOUTHEAST FLORIDA, LLC, et al.,**
Respondents.

_____

No. SC16-400
_____

**AMERICARE HOME THERAPY, INC.,**
Petitioner,

vs.

**CARLA HILES,**
Respondent.

[September 14, 2017]

LEWIS, J.

Two cases have been consolidated and are before the Court for review.

First, we review the decision of the Fourth District Court of Appeal in Mederi

Caretenders Visiting Services of Southeast Florida, LLC v. White, 179 So. 3d 564 (Fla. 4th DCA 2015). In White, the district court, relying on Infinity Home Care, L.L.C. v. Amedisys Holding, LLC, 180 So. 3d 1060 (Fla. 4th DCA 2015), certified that its decision is in direct conflict with the decision of the Fifth District Court of Appeal in Florida Hematology & Oncology v. Tummala, 927 So. 2d 135 (Fla. 5th DCA 2006). White, 179 So. 3d at 564. Second, we review the decision of the Fifth District in Hiles v. Americare Home Therapy, Inc., 183 So. 3d 449 (Fla. 5th DCA 2015). In Hiles, the district court, relying on Tummala, certified that its decision is in direct conflict with the decision of the Fourth District in Infinity Home. Hiles, 183 So. 3d at 454. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

The issue presented is whether home health service referral sources can be a protected legitimate business interest under section 542.335, Florida Statutes (2016).[1] For the reasons that follow, we approve the decision in White, quash the decision in Hiles, and hold that home health service referral sources can be a protected legitimate business interest under the statute.

---

1. The subject non-compete in each case is governed by the statute existing when it was executed. See Cooper v. Thomas Craig & Co., LLP, 906 So. 2d 378, 378 (Fla. 2d DCA 2005) ("The enforceability of a covenant not to compete is controlled by the law at the time the agreement took effect."). However, because there have been no amendments to the statute since its enactment in 1996, the year referred to here is not of importance.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Parties

First, Petitioner, Elizabeth White, is a former employee of the Respondents, Almost Family, Inc. and its Florida-based subsidiary Mederi Caretenders Visiting Services of Southeast Florida, LLC (collectively Caretenders). Caretenders is a licensed home health care company (HHC).

Second, Respondent, Carla Hiles, is a former employee of the Petitioner, Americare Home Therapy, Inc. (Americare). Americare is also a licensed HHC.

### The Home Health Services Industry

HHCs provide skilled nursing, physical therapy, and other home health services to homebound patients. To attract and develop their businesses, HHCs seek referrals from multiple patients' health care providers. Generally, patients seek an HHC after a referral from a physician, hospital, or skilled nursing facility. Depending on the circumstances, the specific referral source varies between doctors, case managers, and referral coordinators. Accordingly, HHCs employ marketing representatives whose primary roles are to cultivate relationships with referral sources in the hope of securing future patient referrals. To effectively solicit referrals, HHCs train their representatives to market and promote the HHC services.

The importance of referrals to HHCs cannot be overstated. One HHC representative testified that without marketing representatives, "his company would no longer be viable." To facilitate their business, HHCs compile internal databases of referral source preferences, strategies, and procedures, which the representatives utilize. Just general nominal information about referral sources is publicly available and known among HHCs. Referral sources neither receive nor pay for the services. The referral relationships are not exclusive and patients have the ultimate decision with regard to which HHC will be selected. Still, some regulations require doctors to write a referral prior to the patient receiving HHC services, similar to a prescription.

Some of the services provided by HHCs are paid for through Medicare which has defined reimbursement rates. As a result, HHCs are highly regulated at both the state and federal levels. For instance, federal "Stark Law" prohibits referring Medicare patients to entities in which the physician has a financial interest. See 42 U.S.C. § 1395nn (2017). Likewise, non-monetary gifts are limited by regulations.

**The Facts of <u>White</u>**

White began working at Caretenders as a marketing representative in 2010. Her primary responsibility was to solicit physicians and medical facilities for home health service referrals to Caretenders in both Martin and St. Lucie counties. Prior

to this employment, White had never worked in the HHC industry and had no marketing skills, training, or experience. As a condition of employment, Caretenders required White to sign a confidentiality and non-compete agreement. This non-compete prohibited White from working for or soliciting referrals for any competing HHC in Martin and St. Lucie counties for one year after leaving Caretenders for any reason. White became dissatisfied and resigned in June 2011. White returned all of Caretenders' materials, in compliance with one provision of the non-compete agreement, but accepted a job with a directly competing HHC, Omni Home Health (Omni).

It is undisputed that while working for Omni within the non-compete territory, White marketed to and attempted to solicit from referral sources for Omni, with whom she had developed relationships based on and during her employment at Caretenders. During this time, Caretenders experienced a decline in new patient referrals from the sources formerly assigned to White. After Caretenders threatened legal action, Omni reassigned White to a region outside the non-compete territory for over one year, in accordance with the non-compete contract.

In December 2011, Caretenders filed a legal action against White, alleging that she violated the non-compete agreement. White moved for summary judgment, contending, where relevant, that the non-compete agreement was

unenforceable because referral sources are not a legitimate business interest under section 542.335 or <u>Tummala</u> as a matter of law. The trial court expressly relied on <u>Tummala</u> and entered a summary judgment in favor of White, concluding that referral sources are not a legitimate business interest that may be protected. On appeal, the Fourth District reversed the trial court and certified conflict with <u>Tummala</u>.

**The Facts of <u>Hiles</u>**

Hiles began working at Americare as a home health liaison in 2011. Her primary responsibility was to market and solicit referral sources for Americare in Volusia County. Before working at Americare, Hiles had worked at a doctor's office in Volusia County for eight years, where her duties included some involvement in directly referring patients to HHCs. However, she did not work for an HHC prior to Americare. As a condition of her continued employment with Americare, Hiles executed a non-compete, non-solicitation, and non-disclosure agreement. This non-compete contract prohibited Hiles from working for any competing HHC within fifty miles of any referral sources that she solicited at Americare for one year after termination of her employment with Americare. Further, during the one-year non-compete period, Hiles was prohibited from soliciting any referral source that any Americare employee had solicited for

Americare during the previous year. This non-compete prohibition applied to a territory of twenty-three counties where Americare operated.

While still working for and being paid by Americare, Hiles began negotiating employment with Doctor's Choice, a directly competing HHC. While still employed by Americare, Hiles gave her non-compete agreement to Doctor's Choice, to obtain an opinion regarding its enforceability, and then began transferring confidential documents from Americare's secure server to her personal e-mail. Even after Hiles tendered her resignation to Americare, on October 3, 2014, she continued to transfer private and confidential documents, including patient names and treatment information, to her personal e-mail. On October 6, 2014, Americare informed Hiles that her employment was terminated. That afternoon, Hiles began working for Doctor's Choice and, again, continued transferring Americare's confidential documents to her personal e-mail. Hiles testified that she transferred the documents to protect her financial interest in receiving a bonus. However, many of the documents that Hiles absconded with from Americare would not serve that purpose. One of those documents was Americare's list of very lucrative referral sources, which an Americare representative called a "target list" for competing HHCs.

While working for Doctor's Choice, Hiles solicited the same referral sources that she had solicited for Americare in Volusia County. In the twelve months prior

to Hiles' departure from Americare, the referrals assigned to Hiles generated approximately $712,000 in gross revenue for Americare. Contrarily, in October 2014, Americare received no referrals from those same sources. The following month, Americare received a significantly decreased volume of referrals from those sources. Americare contends that this downturn was due directly to Hiles' conduct and departure; even though there may be multiple factors that may increase or decrease home health service referrals from month-to-month.

Shortly after her departure, Americare learned that Hiles had violated the non-compete agreement and it demanded that Doctor's Choice cease the violation. When that failed, Americare filed a legal action seeking a temporary injunction. The trial court held two evidentiary hearings and, after the second, orally granted the injunction. Without elaboration, it stated that Tummala was distinguishable. In pertinent part, the Fifth District reversed on the authority of Tummala and certified conflict with Infinity Home.

## ANALYSIS

It is undisputed that both White and Hiles engaged in conduct in violation of their non-compete employment contracts by working for direct competitors of their prior employers within the non-compete territories during the relevant periods. In Florida, a contract providing restrictions on competition must involve a legitimate business interest as defined by statute to be enforceable. § 542.335(1)(b), Fla. Stat.

- 8 -

Therefore, this dispute centers on whether home health service referral sources can be a protected legitimate business interest under section 542.335 sufficient to support a restriction on competition in a contract. For questions of statutory interpretation, this Court undertakes de novo review. E.g., Borden v. E.-European Ins. Co., 921 So. 2d 587, 591 (Fla. 2006).

"It is a fundamental principle of statutory interpretation that legislative intent is the 'polestar' that guides this Court's interpretation." Id. at 595 (quoting State v. J.M., 824 So. 2d 105, 109 (Fla. 2002)). "We endeavor to construe statutes to effectuate the intent of the Legislature." Id. "To determine the legislative intent we look to the plain language of the statute." Thayer v. State, 335 So. 2d 815, 816 (Fla. 1976).

Section 542.335 defines "legitimate business interest" with a list:

The term "legitimate business interest" includes, but is not limited to:

> 1. Trade secrets, as defined in s. 688.002(4).
> 2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets.
> 3. Substantial relationships with specific prospective or existing customers, patients, or clients.
> 4. Customer, patient, or client goodwill associated with:
>     a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress";
>     b. A specific geographic location; or
>     c. A specific marketing or trade area.
> 5. Extraordinary or specialized training.

§ 542.335(1)(b), Fla. Stat. (emphasis added). At first glance, the statute does not precisely list the term "referral source." However, White and Hiles essentially dispute whether the plain language of section 542.335(1)(b)3. precludes recognition of referral sources as protected legitimate business interests. Thus, as a preliminary matter, it is necessary to resolve the conflict between the decisions below.

White and Hiles naturally contend that recognizing referral sources as subject to protection under the statute is contrary to the statute by effectively protecting relationships with unidentified, prospective patients, similar to the Fifth District's reasoning in Tummala and Hiles. Caretenders and Americare argue that they seek to protect relationships with known, existing, and clearly identifiable health care providers, which is not prohibited by section 542.335(1)(b)3., and may be protected under the statute, nor is it prohibited under University of Florida, Board of Trustees v. Sanal, 837 So. 2d 512 (Fla. 1st DCA 2003), following the Fourth District's decisions in White and Infinity Home. On this preliminary issue, we quash Hiles for the following reasons.

In Tummala, the Fifth District held that recognition of referral sources as a protected legitimate business interest is contrary to the plain language of section 542.335. 927 So. 2d at 139. There, the rejected interests were referrals to a specialty medical practice after a doctor left that practice to open a competing one.

- 10 -

Id. at 137-38. The Fifth District relied on the First District Court of Appeal's decision in Sanal, where a non-compete contract claimed an interest in a "prospective patient base"—all persons residing within a fifty-mile radius of a particular hospital. Sanal, 837 So. 2d at 513-14. Reading the plain language of section 542.335(1)(b)3., the First District rejected the interest because "one cannot have 'substantial relationships' with 'prospective patients' who are unidentified and unidentifiable." Id. at 516. Thus, Sanal held that legitimate business interests under section 542.335(1)(b)3. must be "substantial" relationships with a "particular, identifiable, individual." Id. In Tummala, extending Sanal, the Fifth District saw "no way to recognize referring physicians as a legitimate business interest and still give effect to the plain language of the statute" because "referring physicians supply [] a stream of unidentified prospective patients with whom [the practice] had no prior relationship." 927 So. 2d at 139. Below, in Hiles, the Fifth District reaffirmed Tummala and applied its reasoning to home health service referral sources. 183 So. 3d at 454.

Also below, but further south, the Fourth District reached the opposite conclusion, holding "that referral sources are protectable legitimate interests." White, 179 So. 3d at 564. The Fourth District did not explain its reasoning; instead, it relied on Infinity Home. See id. In Infinity Home, the Fourth District rejected Tummala, concluding that referral sources are legitimate business interests

- 11 -

under the statute because they are the " 'lifeblood' of [the] home health care business." 180 So. 3d at 1065-66. Further, the Fourth District noted that section 542.335 is non-exhaustive and that the statute affords courts with latitude to make case-by-case determinations dependent on the facts and industry. Id. at 1063, 1065-66.

Turning back to the statute, the plain language of section 542.335(1)(b)3. does not specifically list referral sources in the express terms. The statute states facially that it "includes, but is not limited to." The statute was never designed or intended to be an exhaustive list. The provision does address "[s]ubstantial relationships with specific prospective or existing customers, patients, or clients." § 542.335(1)(b)3., Fla. Stat. When words of common usage are included in a statute, we construe them "in the plain and ordinary sense" because we presume that the Legislature knows and intends the plain and obvious meaning of the words it used. Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 945 So. 2d 1216, 1225 (Fla. 2006). Despite this specific statutory language, the Fifth District in Hiles relied on Tummala and concluded that recognizing referral sources is contrary to the plain language of the statute. See Hiles, 183 So. 3d at 454. There is clearly no exclusion in the statute for referral sources.

In Sanal and Tummala, the district courts indicated that their holdings were mandated by the plain language of section 542.335(1)(b)3. See Sanal 837 So. 2d at

- 12 -

516; <u>Tummala</u>, 927 So. 2d at 139.  However, because the statute does not expressly exclude any claimed interests, it seems that those courts necessarily applied the principle <u>expressio unius est exclusio alterius</u>—"the mention of one thing implies the exclusion of another."  See <u>Moonlit Waters Apartments, Inc. v. Cauley</u>, 666 So. 2d 898, 900 (Fla. 1996).  Inherent in the <u>Sanal</u> holding is the conclusion that the statute including "[s]ubstantial relationships with specific prospective . . . patients" automatically excludes a claimed interest in an unidentified prospective patient base and, by <u>Tummala</u>'s extension, referral sources as well.  § 542.335(1)(b)3., Fla. Stat.; <u>Sanal</u>, 837 So. 2d at 516.

Generally, it is improper to apply <u>expressio unius</u> to a statute in which the Legislature used the word "include."  See 2A Norman J. Singer, <u>Sutherland Statutory Construction</u> § 47.25 (7th ed. 2014).  This follows the conventional rule in Florida that the Legislature uses the word "including" in a statute as a word of expansion, not one of limitation.  See, e.g., <u>In Re B.R.C.M.</u>, 182 So. 3d 749, 752 (Fla. 3d DCA 2015), <u>quashed on other grounds</u>, 215 So. 3d 1219 (Fla. 2017) (interpreting "includes" in section 39.01(47), Florida Statutes (2015), expansively); <u>Childers v. State</u>, 936 So. 2d 585, 597 (Fla. 1st DCA 2006) (interpreting "includes" in section 1.01(3), Florida Statutes (2002), expansively); <u>Miami Country Day Sch. v. Bakst</u>, 641 So. 2d 467, 469 (Fla. 3d DCA 1994) (interpreting "including" in section 222.05, Florida Statutes (1993), expansively); <u>Yon v. Fleming</u>, 595 So. 2d

573, 577 (Fla. 4th DCA 1992) (interpreting "includes" in section 61.1306(3), Florida Statutes (1991), expansively). Referral sources are simply not antithetical to the plain language of the statute because they are different interests than those contemplated by section 542.335(1)(b)3.

Attempting to protect identifiable referral sources is distinct from claiming an interest in an unidentified patient base. Infinity Home, 180 So. 3d at 1065. In his Hiles concurrence, Judge Sawaya recognized this. 183 So. 3d at 456 (Sawaya, J., concurring) (stating "I believe that Tummala stretches too far the holding in [Sanal]"). Although he felt constrained by Tummala, Judge Sawaya distinguished Sanal because it rejected an interest in unidentified, prospective patients in the community at large. Id. (Sawaya, J., concurring). HHCs' interests in relationships with individual patients are distinguishable from those they form with identifiable referral sources. Again, Judge Sawaya correctly articulated this distinction.

> [W]e are dealing with referral sources that are cultivated by a business or individual in the hopes that patients will be referred in the future. Thus, the business interest is the referral source, and referral sources are neither excluded by the decision in Sanal nor by the statute. The statute merely lists a number of legitimate business interests, but that list is not exclusive. While referral sources are not specifically listed, this does not mean that they may not qualify as a legitimate business interest.

Id. (Sawaya, J., concurring).

Despite the distinct nature of interests in referrals and unidentified patients, the Fifth District recognized that referral sources may protect HHCs' ability to

- 14 -

receive referrals of unidentified, prospective patients.  Id. at 454; see Tummala, 927 So. 2d at 138-39.  However, for HHCs that suggestion falls flat because they are dependent upon referrals to obtain patients as HHCs do not directly solicit patients.  In fact, a physician signing a treatment order can be a condition precedent to receiving home health services, similar to a prescription.  See § 400.487(2), Fla. Stat. (2016).  Therefore, for an HHC to obtain a specific prospective or existing patient contemplated by section 542.335(1)(b)3., it must first develop a referral source to supply the patient.  Further, regardless of this end-result relationship, barring the protection of interests not specifically precluded by the statute is problematic because that would essentially convert section 542.335(1)(b)3. into an unintended and silent limitation on the statute's non-exhaustive list definition.  For instance, enforcing non-compete agreements would almost always, by some token, impact existing or prospective clients.  That is the very nature and purpose of non-compete agreements—to protect an employer's business.  Although courts may engage in tortured readings to fit nearly every distinct, non-enumerated interest into section 542.335(1)(b)3., to use that provision as a limitation on the specifically-expressed, non-exhaustive statute is an untenable position, contrary to the plain language of the statute.

For the foregoing reasons, we conclude that section 542.335(1)(b)3. does not preclude recognizing referral sources as protected legitimate business interests.  As

a result, we quash the decision in <u>Hiles</u>, where the Fifth District relied on its earlier

decision in <u>Tummala</u>.

Now we turn to the dispositive issue: whether home health service referral

sources can be a protected legitimate business interest under section 542.335.

Again, to determine the Legislature's intent, we first look at the plain

language of the statute. <u>Thayer</u>, 335 So. 2d at 816. In pertinent part, the statute

reads:

The term "legitimate business interest" <u>includes, but is not limited to</u>:

     1. Trade secrets, as defined in s. 688.002(4).
     2. Valuable confidential business or professional
information that otherwise does not qualify as trade
secrets.
     3. Substantial relationships with specific prospective or
existing customers, patients, or clients.
     4. Customer, patient, or client goodwill associated with:
          a. An ongoing business or professional
practice, by way of trade name, trademark,
service mark, or "trade dress";
          b. A specific geographic location; or
          c. A specific marketing or trade area.
     5. Extraordinary or specialized training.

§ 542.335(1)(b) (emphasis added). As discussed above, the statute does not

explicitly list referral sources; but, this fact does not end our inquiry because

facially the statute is not intended to be an exhaustive list.

The statute defines legitimate business interests through a non-exhaustive

list. <u>See</u> <u>Colucci v. Kar Kare Auto. Grp., Inc.</u>, 918 So. 2d 431, 438 (Fla. 4th DCA

- 16 -

2006) ("Florida Statutes section 542.335(1)(b) (2004) provides a nonexclusive list of 'legitimate business interests.' "). "The word 'include' in a statute generally signals that entities not specifically enumerated are <u>not</u> excluded." Singer, <u>supra</u>, at § 47.25 (emphasis added). Commonly, the term "include" suggests that a list is non-exhaustive:

> include, vb. (15c) To contain as a part of something. The participle <u>including</u> typically indicates a partial list.

<u>Black's Law Dictionary</u> (10th ed. 2014). The law confirms this usage in a similar fashion. <u>See, e.g.</u>, <u>Fed. Land Bank of St. Paul v. Bismarck Lumber Co.</u>, 314 U.S. 95, 100 (1941) (stating that "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle"); <u>Childers</u>, 936 So. 2d at 597 (concluding that "includes" introduced a non-exhaustive list). Therefore, the qualifying phrase "includes, but is not limited to" made clear that the Legislature intended to allow the protection of more interests than simply those set forth in the non-exhaustive list.

The statutory list is slightly broader than the three legitimate business interests recognized in <u>Hapney</u>, however, both are largely similar. <u>Compare</u> <u>Hapney v. Cent. Garage, Inc.</u>, 579 So. 2d 127, 131 (Fla. 2d DCA 1991), <u>disapproved on other grounds</u>, <u>Gupton v. Vill. Key & Saw Shop, Inc.</u>, 656 So. 2d 475, 476 (Fla. 1995), (recognizing interests in trade secrets and other confidential business information, customer goodwill, and extraordinary or specialized

- 17 -

training), with § 542.335(1)(b) (protecting the Hapney interests along with substantial relationships with specific prospective or existing customers).  This, in conjunction with the non-exhaustive definition, indicates that the Legislature sought to codify Hapney without limiting the statute to its enumerated interests.  See Fla. H.R., recording of proceedings (Apr. 24, 1996) (available at Fla. Dep't of State, Fla. State Archives, Tallahassee, Fla.) (Representative Sublette speaking at 15:09) (stating that the bill "incorporates the Hapney v. Central Garage decision, which required a legitimate business interest"); John A. Grant, Jr. & Thomas T. Steele, Restrictive Covenants: Florida Returns to the Original "Unfair Competition" Approach for the 21st Century, 70 Fla. B.J. 53, 54 (Nov. 1996) (stating that the non-exhaustive definition "ma[de] clear that other unspecified interests also may merit protection").  Moreover, Hapney itself clarified that, other than the three listed categories, "other business interests . . . may constitute protectable interests depending upon the proof adduced."  579 So. 2d at 134.  Therefore, the illustrative list guides courts in their interpretation of what types of non-enumerated business interests qualify as legitimate under section 542.335.  However, because the statute protects more business interests than those specifically listed, courts must necessarily engage in fact- and industry-specific determinations when construing non-enumerated interests.  See Hiles, 183 So. 3d

- 18 -

at 456 (Sawaya, J., concurring); Infinity Home, 180 So. 3d 1065-66; Hapney, 579 So. 2d at 131-32; Grant & Steele, supra, at 53-54.

Other than their connection to Hapney, consideration of the interests in the statutory list reveals only one discernable similarity: preventing unfair competition by protecting crucial business interests.[2] See § 542.335(1)(b); Henao v. Prof'l Shoe Repair, Inc., 929 So. 2d 723, 726-27 (Fla. 5th DCA 2006); Grant & Steele, supra, at 53-54. As an HHC's most important business asset, referral sources appear to follow the legitimate business interests listed in the statute. See Infinity Home, 180 So. 3d at 1065-66 (calling referral sources "with whom it has developed substantial relationships [] the 'lifeblood' of [a] home health care business"); Tummala, 927 So. 2d at 138 (noting that referrals are "perhaps [a specialist medical practice's] most crucial 'business interest' "). Moreover, it seems obvious that allowing an employee to work for a short period, receive pay to cultivate referral sources using an HHC's resources, and then remove advantageous information to a direct competitor to solicit those same referrals—all of which was precluded by a non-compete contract that the employee signed— would not only condone but actually encourage unfair competition. Considering

---

2. Contrary to White's assertion, this list does not represent a codification of the common law. For example, customer goodwill is protected under section 542.335(1)(b)4.; however, that interest was unprotected at common law. Love v. Miami Laundry Co., 160 So. 32, 36 (Fla. 1935).

the egregious facts with which we are presented in <u>Hiles</u>, this concern is more real than conjecture.

Additionally, for HHCs, there is an indispensable relationship between referral sources and their undisputed legitimate business interests in relationships with patients protected by section 542.335(1)(b)3.  <u>See</u> <u>supra</u> pp. 14-15.  Likewise, it may be noted that referral sources are somewhat analogous to customer goodwill, which is expressly protected by section 542.335(1)(b)4.

Beyond the statutory list, section 542.335 provides no specification for what non-enumerated business interests are legitimate.  Moreover, the legislative history is not helpful.[3]  Still, this Court has some additional direction:

> A review of those examples [in section 542.335(1)(b)] confirms that a "legitimate business interest" is an <u>identifiable business asset that constitutes or represents an investment by the proponent of the restriction</u> such that, if that asset were misappropriated by a competitor (i.e., taken without compensation), its use in competition against its former owner would be "unfair competition."  Put another way, a "legitimate business interest" is <u>a business asset that, if misappropriated, would give its new owner an unfair competitive advantage over its former owner</u>.

Grant & Steele, <u>supra</u>, at 54 (emphasis added).  Although this characterization may be a finite reflection of the broader legislative intent, it harmonizes the statute with

---

3. Although various legislators and a Florida Bar representative made clear that the statute focuses enforceability of restrictive covenants on legitimate business interests, they failed to provide a definition of the term.

this Court's initial analyses of an unfair competition approach to restraints of trade. See Capelouto v. Orkin Exterminating Co. of Fla., Inc., 183 So. 2d 532, 534 (Fla. 1966) ("enforc[ing non-competes] in such [a] way as to protect the legitimate interests of the employer without doing harm to the public interest, and without inflicting an unduly harsh or oppressive result on the employee"); Miller Mech., Inc. v. Ruth, 300 So. 2d 11, 12 (Fla. 1974) (explaining that section 542.335's predecessor was "designed to allow employers to prevent their employees and agents from learning their trade secrets, befriending their customers and then moving into competition with them"). Finally, this approach is in accord with Sanal because both require identifiable business interests dependent on the context. Sanal, 837 So. 2d at 516.

Incidentally, although the exact boundaries of section 542.335(1)(b) are not drafted with precision, the scope of unprotected business interests is well established. Section 542.335 does not protect covenants "whose sole purpose is to prevent competition per se" because those contracts are void against public policy. Colucci, 918 So. 2d at 440. For an employer to be entitled to protection, "there must be special facts present over and above ordinary competition" such that, absent a non-competition agreement, "the employee would gain an unfair advantage in future competition with the employer." Passalacqua v. Naviant, Inc., 844 So. 2d 792, 795 (Fla. 4th DCA 2003) (quoting Hapney, 579 So. 2d at 130).

- 21 -

Additionally, section 542.335 is set against the backdrop that contracts in restraint of trade are generally unlawful. See § 542.18, Fla. Stat. (2016) ("Every contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful."). Thus, section 542.335 is a carve out of the general prohibition, striking a delicate balance between legitimate business interests and a person's inalienable right to work. See art. I, § 2, Fla. Const.; see also Hapney, 579 So. 2d at 131.

However, the statute ameliorates any concern regarding overly restrictive covenants. Section 542.335 commands courts to modify, or blue pencil, a non-competition agreement that is "overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest," instructing courts to "grant only the relief reasonably necessary to protect such interest." § 542.335(1)(c), Fla. Stat.; see PartyLite Gifts, Inc. v. MacMillan, 895 F. Supp. 2d 1213, 1227 (M.D. Fla. 2012) (applying Florida law). Thus, section 542.335's phrasing of the business interests that may be protected in broad terms and its restricting courts from applying certain rules of contract construction, the statute grants trial courts fairly wide discretion to fashion the appropriate context-dependent remedy. See § 542.335(1)(c), (h), (j), Fla. Stat. The cases at bar present a good illustration of the breadth of enforceable non-compete restrictions. For example, the non-competition contract in Hiles effectively extended to only the twenty-three

counties in which Americare actually operates.  The non-competition agreement in White was limited to the two counties in which White actually solicited referrals for Caretenders.  White's non-competition contract was a limited restriction to protect Caretenders' most important and essential business asset.  Nevertheless, the reasonable scope of the covenants is not before this Court; rather, the precise issue is whether home health service referral sources can ever be a protected legitimate business interest.

In light of the foregoing, we conclude that home health service referral sources may be a protected legitimate business interest within the meaning of section 542.335, depending upon the context and proof adduced.  Certain industries, such as home health services, present special facts where protecting referral sources may be necessary to prevent unfair competition.  See Passalacqua, 844 So. 2d at 795.  Consequently, the determination of whether an activity qualifies as a protected legitimate business interest under the statute is inherently a factual inquiry, which is heavily industry- and context-specific.  See Infinity Home, 180 So. 3d at 1065-66.  As demonstrated, the subject statute protects a plethora of protected legitimate business interests far beyond those explicitly listed in the subject statute.  Home health service referral sources can be counted among those protectable interests depending on the circumstances.

Sitting in a Tallahassee courthouse with a frozen record before us, we cannot precisely define the exact parameters of what constitutes a "legitimate business interest" in the myriad of commercial disputes that may arise across this diverse State. Instead, trial courts are well positioned to construe the phrase to determine the legitimacy of a particular business interest—in conjunction with the industry context and evidence adduced. What is clear, however, is that the statute is not an exhaustive list of protected business interests. A plain reading of the statute mandates our holding. Nevertheless, the inevitable paradox between protecting employers' legitimate business interests and allowing employees to restrict their own right to work bears out the necessity for a context-based statute such as section 542.335. For instance, an interest in referral sources for specialist physicians may be a legitimate business interest, thus capable of protection in some circumstances and unprotected in others.[4] Therefore, we approve the decision in White, in which the Fourth District relied on the reasoning of its earlier decision in Infinity Home.

---

4. This illustrates that the analysis of non-competition contracts is context driven. For example, Tummala noted that certain sources made "referrals based upon their assessment of the individual doctor" and did "not refer to a 'business' or a 'practice.' " 927 So. 2d at 139. Thus, a situation with similar facts to Tummala could come to the same result as the Fifth District there. However, the proper evaluation would focus on the particular context and proof adduced instead of ruling that referral sources are unprotected as a matter of law.

Finally, we address the resolution of <u>White</u> and <u>Hiles</u>. Given the procedural posture of these cases, we must remand each for reconsideration in light of this decision. The fact that referral sources <u>can</u> constitute a legitimate business interest does not automatically satisfy all possible factual issues. We cannot resolve all factual questions on the record before us. We remand each case to its respective district court with instructions that the cases be further remanded to the appropriate trial courts for consideration of all facts necessary for a final resolution of each case and appropriate remedies.

## CONCLUSION

Accordingly, we hold that section 542.335, Florida Statutes, is non-exhaustive and does not preclude the protection of referral sources; hence, home health service referrals may be a protected legitimate business interests depending on the context and proof adduced. As a result, we approve the decision in <u>White</u> and quash the decision in <u>Hiles</u>. Finally, we remand to the district court with instructions to further remand to the appropriate trial court for any necessary further proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, CANADY, POLSTON, and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

   Fourth District - Case Nos. 4D14-488 and 4D14-2460

   (St. Lucie County)

and

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

   Fifth District - Case No. 5D15-9

   (Volusia County)

Jane Kreusler-Walsh, Rebecca Mercier Vargas, and Stephanie L. Serafin of Law Office of Kreusler-Walsh, Compiani & Vargas, P.A., West Palm Beach, Florida; Margaret Cooper of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, Florida; and Joel C. Zwemer and Daryl J. Krauza of Dean, Mead, Minton & Zwemer, Fort Pierce, Florida,

   for Petitioner Elizabeth White

W. Braxton Gillam, IV, Peter E. Nicandri, and Patrick W. Joyce of Milam Howard Nicandri Gillam & Renner, P.A., Jacksonville, Florida,

   for Petitioner Americare Home Therapy, Inc., a Florida Corporation d/b/a Americare Home Health

Patrick M. Muldowney and James W. Seegers of Baker & Hostetler LLP, Orlando, Florida,

   for Respondents Mederi Caretenders Visiting Services of Southeast Florida, LLC, and Almost Family, Inc., a Delaware Corporation

Keith J. Hesse of Shuffield, Lowman & Wilson, P.A., Orlando, Florida,

   for Respondent Carla Hiles