PER CURIAM.
This appeal and cross-appeal arise from an ex parte default final judgment entered against Leonard Gartner. Therein, the trial court ordered Gartner to pay his former counsel, Richard Fowler, Esq. and the *1048 Fowler Law Firm (collectively Fowler) the amount remaining due under the terms of a mediated settlement agreement the parties reached after Gartner discharged Fowler in a dissolution of marriage action. In the same order, the trial court refused to enforce a provision of the agreement which required Gartner to pay a higher sum in the event of a default. Fowler appeals the trial court’s determination that this provision created an unenforceable penalty. Gartner cross-appeals the trial court’s determination that he defaulted and failed to timely cure his default. We conclude the default was cured timely and reverse on that basis. Accordingly, we do not reach the issue raised by Fowler’s appeal.
The facts here essentially are undisputed. Gartner retained Fowler to represent him in his dissolution of marriage proceeding. While the matter was pending, Gart-ner discharged Fowler and hired alternate counsel. Fowler and Gartner then became enmeshed in a fees dispute. Ultimately, the parties submitted to mediation and reached a settlement agreement. Gartner agreed to pay Fowler a total of $107,000, instead of the $208,000 claimed by Fowler, in twelve equal payments. Each payment was due the “first of each month.” In the event of a default, Fowler was required to issue a notice of default to Gartner. From the date of that notice, Gartner would be given “a five business day right” to cure the default. If Gartner failed to timely make a cure, Fowler would then be entitled to the full $208,000 claimed.
When Fowler did not receive a payment from Gartner on June 1, 2011, Fowler’s attorney sent an email to Gartner’s attorney, at 4:51 p.m. that day, which purported to be a notice of default. Apparently, Gartner had placed a check in the mail that day, which Fowler’s attorney received June 3, 2011. However, the check was not cashed until June 7, 2011, at which point Gartner’s account had a negative balance and the check was returned for insufficient funds. Thereafter, on June 9, 2011, Gart-ner wired his payment to Fowler’s attorney, but the transfer was refused. Instead, Fowler opted to file a motion for default judgment, seeking the $208,000, less payments made to date, as provided for in the parties’ agreement. Following a healing on the matter, the trial court entered the order on appeal, and found Gart-ner defaulted on the agreement by failing to pay on June 1 and failing to cure within five business days from June 1. We disagree.
“As a general proposition, the use of different language in different contractual provisions strongly implies that a different meaning was intended.” Kel Homes, LLC v. Burris, 933 So.2d 699, 703 (Fla. 2d DCA 2006). Here, Fowler contends both the payment and cure provisions should be given the same meaning— that of a normal working day from 9:00 a.m. to 5:00 p.m. But the parties did not use “business day” with regard to the payment date. This suggests different methods of calculating time for each event. Moreover, “day,” which is implied in the payment provision, generally refers to a natural or calendar day, which is “[a] consecutive 24-hour day running from midnight to midnight.” Black’s Law Dictionary 495 (9th ed. 2009). In calculating days, therefore, the time extends to midnight. See Young v. Young, 152 Fla. 712, 12 So.2d 885, 886 (1943); Poinciana Hotel of Miami Beach, Inc. v. Kasden, 370 So.2d 399, 400 (Fla. 3d DCA 1979). Whereas, a “business day” refers to “[a] day that most institutions are open for business,” or from 9:00 a.m. to 5:00 p.m. on weekdays. Black’s Law Dictionary 495 (9th ed. 2009).
Accordingly, we agree with Gartner that the day for payment ran until mid *1049 night June 1, 2011, and the soonest he could receive notice of default was 12:01 a.m. on June 2, 2011. Thus, the notice of default given at 4:51 p.m. on June 1 was premature,[1] and the five-business-day cure period did not commence until June 2. Because June 4 and 5 were weekend days, the payment wired on June 9 was timely and should not have been refused. See Multach v. Adams, 418 So.2d 1254, 1255 (Fla. 4th DCA 1982) (“[T]he refusal to accept a proper tender will prevent the collection of interest or other damages because the failure to receive payment is due to the promisee’s own action.”).
Finding the default at issue was timely cured, the trial court’s final judgment against Gartner is reversed.
Reversed.

. The notice would be premature even using Fowler’s "business day” deadline, as default was declared at 4:51 p.m., not 5:00 p.m.