# Third District Court of Appeal

## State of Florida

Opinion filed January 19, 2022.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D20-0985
Lower Tribunal No. 20-3662

————————————

**Javier Alonso-Llamazares, M.D.,**
Appellant,

vs.

**International Dermatology Research, Inc., etc.,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Valerie R. Manno Schurr, Judge.

Ainsworth + Clancy, PLLC, and Janna O. Mateo and Ryan M. Clancy, for appellant.

Feiler & Leach, P.L., and Martin E. Leach, for appellee.

Before HENDON, MILLER and LOBREE, JJ.

LOBREE, J.

This appeal stems from a non-compete agreement entered into

between appellant Javier Alonso-Llamazares, M.D. ("Dr. Alonso") and his former employer, appellee International Dermatology Research Inc. ("IDR"). After IDR terminated Dr. Alonso's employment, IDR sought, and was granted, a temporary injunction enforcing the parties' non-compete agreement. We affirm the trial court's determination that the non-compete agreement was enforceable and the requirements for a temporary injunction were established, but reverse and remand for the trial court to describe in reasonable detail the act or acts restrained as required by Florida Rule of Civil Procedure 1.610(c).

Background Facts and Procedural History

IDR is a medical practice management business that utilizes dermatologists to conduct clinical research projects in the area of dermatology. On October 4, 2011, IDR and Dr. Alonso entered into an Agreement for Management Services and Clinical Research Services (the "Agreement"). Under the Agreement, IDR agreed to provide certain management services to Dr. Alonso's dermatological medical practice. Dr. Alonso, in turn, agreed to conduct clinical research projects for and on behalf of IDR. Because this case concerns interpretation of the terms of the Agreement, relevant sections are set forth at length below. Section 3 of the Agreement is entitled "Term" and provides in relevant part as follows:

2

Unless terminated earlier pursuant to Section 11 of this Agreement, the term of engagement under this Agreement shall be for a period of two (2) year [sic] commencing on the Effective Date and ending on the first anniversary of the Effective Date (the "Term").

Section 11 of the Agreement, entitled "Termination," provides in part as

follows:

11.1 *Termination by Company*. Company shall be entitled to terminate this Agreement, upon written notice to Physician, at any time for any or no reason.

11.2 *Termination by Physician*. . . .

11.3 *Effects of Termination*. Upon the termination of this Agreement:

(a) Physician's duties and Company's obligations shall cease as of the effective date of termination, provided, however, that the Physician shall in all events of termination be responsible for arranging for the smooth transition of Physician's duties to appropriate employees or contractors of Company and all duties and obligations of Physician intended to survive termination shall survive (including Physician's obligations under Sections 8, 9.9, 12 and 13 of this Agreement).

(emphasis in original). Dr. Alonso also agreed to a non-compete provision

in section 12 of the Agreement that required the following:

12. Non-Competition and Confidentiality. Physician acknowledges that incident to Physician's engagement, Physician will gain extensive and valuable experience and knowledge relating to Company and the Company's business and will have access to confidential information relating to the business and operations of Company, the use or disclosure of which would cause Company substantial loss and damages that would not be readily calculated and for which no remedy at law

3

would be adequate. Accordingly, as a material inducement to Company's entering into this Agreement, Physician hereby covenants as follows:

12.1 *Non-Competition*. **During the Term of this Agreement and thereafter for a period of two (2) years (the "Post-Term Restrictive Period") from the date of expiration or termination of the Term of this Agreement** for any reason whatsoever, Physician shall not directly or indirectly, on Physician's own behalf or as a principal, partner, member, shareholder, officer, employee, agent, consultant, contractor, physician, director or trustee of any person, partnership, firm, association, corporation, hospital, clinic or other medical facility: (i) engage in the practice of medicine anywhere within a two (2) mile radius of the Premises provided by the Company for the operation of the Practice; (ii) perform, conduct, promote, market, exploit, participate in, engage in or otherwise be involved with, or engage in any business that directly or indirectly performs, conducts, promotes, markets, exploits or engages in or is otherwise involved in, clinical research or trials relating to dermatology including, without limitation, dermatological products or procedures, anywhere within a five (5) mile radius of the Premises provided by the Company for the operation of the Practice; (iii) attempt to solicit or solicit or otherwise contact the patients, customers or clients (including any pharmaceutical companies or manufacturers) of Company or other physician practices managed by Company or use patient or customer lists developed or owned by Company or other physician practices managed by Company; or (iv) divert or attempt to divert from Company or other physician practices managed by Company any business or business opportunity whatsoever or accept any business from any patients, customers or clients (including any pharmaceutical companies or manufacturers) of Company or other physician practices managed by Company; provided that, Physician may conduct any clinical studies that are not the same as or similar to the types of studies conducted by the Company (as determined by the Company), provided Physician first obtains the Company's written consent to each such study. . . .

12.2 *Confidentiality of Patient and Client Information*. . . .

4

12.3 *Enforcement*. Physician acknowledges and agrees that irreparable injury will result to Company in the event of Physician's breach of any covenant set forth in this Section 12, that a material inducement to Company's engagement of Physician is the covenants set forth in Section 12, and that monetary damages in an action at law would not provide an adequate remedy in the event of a breach of this Section 12. Physician further acknowledges and agrees that the covenants contained in Section 12 are necessary for the protection of Company's legitimate business and professional duties, ethical obligations, and interest, and are reasonable in scope and content and have been negotiated in good faith and on an arms-length basis. In the event of Physician's breach or threatened breach of Section 12, this Section may be enforced by the obtaining of an injunction to restrain the violation thereof by Physician.

12.4 *Survival*. **The covenants of this Section 12 shall survive the expiration or termination of this Agreement**.

(bold emphasis added)  The parties continued their relationship when the Agreement expired in 2013.  On January 4, 2016, the parties executed an Amendment to Agreement (the "First Amendment"), modifying provisions of the Agreement, including that the Term of the engagement under the Agreement is through December 31, 2016.  The First Amendment also stated that all other aspects of the Agreement remained in effect, including section 12.  Then, on January 4, 2017, the parties executed a Second Amendment to Agreement (the "Second Amendment").  The Second Amendment provided that "the term of the engagement under this Agreement shall be through December 31, 2017 (the 'Term')."  As with the

5

First Amendment, apart from other modifications made by the Second Amendment, the Agreement remained in effect, including but not limited to section 12. Finally, on June 1, 2017, the parties executed the Third Amendment to Agreement (the "Third Amendment"). The Third Amendment made changes to Dr. Alonso's hours and compensation but did not modify the Term. The Third Amendment also provided that "[i]n all other respects, the Agreement, the First Amendment and the Second Amendment remain in full force and effect, including, but not limited to, Section 12-Non-Competition and Confidentiality."

Dr. Alonso continued to work for IDR after December 31, 2017. Subsequently, IDR notified Dr. Alonso by letter that "as of November 1, 2019, your services are no longer required at [IDR]."[1] Dr. Alonso then began operating Driven Research LLC on January 2, 2020. Dr. Alonso does not dispute that he began Driven Research to conduct clinical trials and that as of January 2, 2020, he was competing with IDR.

Shortly thereafter, on February 12, 2020, IDR filed suit against Dr. Alonso, seeking temporary and permanent injunctions and asserting claims for breach of contract and tortious interference with contractual relations

---

[1] Although the letter is undated, the parties stipulated that IDR "terminated [Dr. Alonso's] employment on November 1, 2019, through a written letter."

6

based on Dr. Alonso's active competition against IDR. IDR moved for emergency injunctive relief, arguing that Dr. Alonso breached section 12 of the Agreement by competing with IDR and soliciting IDR's customers and clients. IDR argued that it was entitled to an injunction because section 542.335(1)(j), Florida Statutes (2017),[2] provides that irreparable harm is presumed when a party establishes the violation of an enforceable restrictive covenant. IDR also asserted that it did not have an adequate remedy at law. IDR argued that it had a likelihood of success on the merits because the Agreement contained an enforceable non-compete provision and further argued that the granting of a temporary injunction was not against the public interest because public policy favors the enforcement of contracts and non-compete agreements, as evidenced by section 542.335. IDR sought to enjoin Dr. Alonso from: (1) working with Driven Research; (2) directly or indirectly competing with IDR for a period of two years; (3) being involved in clinical research or trials relating to dermatological products or procedures

---

[2] A non-compete provision "is governed by the statute existing when it was executed." White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC, 226 So. 3d 774, 777 n.1 (Fla. 2017). Here, the Third Amendment, which stated that "[i]n all other respects, the Agreement, the First Amendment and the Second Amendment remain in full force and effect, including, but not limited to, Section 12-Non-Competition and Confidentiality," was entered into in 2017. As noted in White, there have been no amendments to section 542.335 since its enactment in 1996. Id.

7

for a period of two years within a five-mile radius; (4) attempting to solicit or soliciting or contacting IDR's patients, customers, or clients for a period of two years; (5) using patient or customer lists developed by IDR. IDR also demanded that Dr. Alonso to turn over any of IDR's confidential information in his possession.

Dr. Alonso responded that IDR did not have a likelihood of success on the merits because the post-term restrictive period was not in effect on January 2, 2020, when he began working for Driven Research. Specifically, Dr. Alonso argued that the Agreement expired on December 31, 2017, "meaning that the Restrictive Covenant would be in full force and effect for two years from the end of the Term (December 31, 2019)." Thus, Dr. Alonso asserted, "[t]he expiration date for the Non-Compete clause is December 31, 2019," and he was not in breach of the non-compete provision when he began working for Driven Research. Dr. Alonso denied soliciting IDR's clients, but stated that even if he had, this was permissible because the non-compete provision had expired. Dr. Alonso further argued that IDR could not show irreparable harm because after December 31, 2019, he was free to compete with IDR. As to whether the public interest would be served by granting an injunction, Dr. Alonso stated that the public interest would not be

served by enforcing an expired contract and that enjoining medical research "for the most part" is not in the public interest.

The trial court held an evidentiary hearing to address IDR's motion. IDR argued that the non-compete provision was reasonable in length and geographic limitation. IDR also asserted that the non-compete provision was in effect on January 2, 2020, because section 12.4 of the Agreement provides that "[t]he covenants of this Section 12 shall survive the expiration or termination of this Agreement." Under section 12.4, the non-compete provision survived the expiration of the Agreement and the two-year period of restraint was then triggered on November 1, 2019, when IDR terminated Dr. Alonso's employment in accordance with section 11.1. In response, Dr. Alonso argued that the non-compete provision was not valid because under the clear language of the Agreement, the Agreement expired on December 31, 2017, and the non-compete provision lasts for two years thereafter, ending on December 31, 2019. Dr. Alonso maintained that reading section 12.1 and 12.4 together, the non-compete restraints in 12.1 survive for only two years after expiration of the term of the Agreement.

At the hearing, the trial court heard testimony from Dr. Alonso and Silvia Trinidad ("Trinidad"), the president and CEO of IDR. Trinidad testified that prior to working with IDR, Dr. Alonso had not worked in clinical trials that

9

were regulated by the FDA, and that IDR trained him in that area. IDR also paid for Dr. Alonso to attend conferences to introduce him to and foster his relationship with pharmaceutical companies and contract research organizations.[3] Significantly, Trinidad also testified that Dr. Alonso had sent a letter to one of IDR's clients in which he requested work from that client and for the client to visit him. Trinidad testified that Dr. Alonso obtained a list of IDR's clients, patients and subjects for trials, contract research organizations, and the prices IDR charges for studies it conducts. Trinidad asserted that Dr. Alonso obtained this information through IDR employees who he "took from IDR" and are working for him. Trinidad also testified that former patients of IDR had called IDR to make appointments for a study Dr. Alonso was conducting after they were contacted by someone at Dr. Alonso's office who had previously worked at IDR. On cross-examination, Trinidad acknowledged that while at IDR, Dr. Alonso did not have access to a computer containing the list of patients or prices.

Dr. Alonso testified that prior to working at IDR, he had been involved in two clinical studies. He also testified that when he worked at IDR, and now at Driven Research, he does not have access to a patient database.

---

[3] Trinidad explained that contract research organizations are a liaison between pharmaceutical companies and researchers.

10

On cross-examination, Dr. Alonso admitted that he is competing with IDR.[4]

The trial court granted IDR's motion for a temporary injunction. First, the trial court found that the non-compete provision was enforceable. The trial court found that the provision was supported by three legitimate business interests: (1) valuable confidential business information; (2) substantial relationships with specific prospective or existing customers; and (3) specialized training. The trial court further found that Dr. Alonso "failed to assert any sufficient challenge to the geographic scope or the duration of the Non-Compete Agreement, or the scope of activity prohibited by it." As to Dr. Alonso's argument that the non-compete provision had expired, the trial court found that under section 12.4, the non-compete provision survived the expiration of the Agreement where Dr. Alonso continued to work at IDR.

Second, the trial court determined that the requirements for a temporary injunction had been satisfied. The trial court found that: (1) IDR will continue to suffer immediate and irreparable harm if Dr. Alonso is not prohibited from additional breaches and Dr. Alonso did not rebut the statutory presumption of irreparable harm under section 542.335(1)(j); (2) IDR has a substantial likelihood of success on its claim that Dr. Alonso breached

---

[4] Dr. Alonso stated, "First of all, I'm not competing with the plaintiff only. I'm competing with every clinical researcher in Miami."

11

section 12 of the Agreement; (3) IDR did not have an adequate remedy at law; and (4) the temporary injunction will further the public interest in IDR's ability to protect its investment in its own business information and Dr. Alonso made no showing that a specific public policy requirement substantially outweighed the need to protect IDR's legitimate business interest.

Dr. Alonso moved for reconsideration and, in the alternative, for a stay pending review, reasserting his argument that he was not subject to the non-compete provision on January 2, 2020, because it expired on December 31, 2019. In support of his motion for stay pending review, Dr. Alonso attached an affidavit stating that Driven Research will be in non-compliance with the FDA if he does not oversee the research and that patients could be left without proper medical supervision unless a stay is issued. After a hearing, the trial court denied Dr. Alonso's motion for reconsideration and deferred ruling on the stay. Dr. Alonso's appeal from the trial court's order granting a temporary injunction and the denial of his motion for reconsideration followed.[5]

---

[5] We have jurisdiction to review the non-final order granting the temporary injunction under Florida Rule of Appellate Procedure 9.130(a)(3)(B). Because the order denying Dr. Alonso's motion for reconsideration was entered and appealed within 30 days from the entry of the temporary

12

<u>Standard of Review</u>

"The standard of review of trial court orders on requests for temporary injunctions is a hybrid.  To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review." <u>Gainesville Woman Care, LLC v. State</u>, 210 So. 3d 1243, 1258 (Fla. 2017) (quoting <u>Fla. High Sch. Athletic Ass'n v. Rosenberg ex rel. Rosenberg</u>, 117 So. 3d 825, 826 (Fla. 4th DCA 2013)); <u>accord</u> <u>Fla. Dep't of Health v. Florigrown, LLC</u>, 317 So. 3d 1101, 1110 (Fla. 2021) ("We review a trial court's factual findings on the[] elements [of a claim for a temporary injunction] for competent, substantial evidence, and we review its legal conclusions de novo.  To the extent the decision to enter a temporary injunction involves an exercise of discretion, we defer to the trial court unless it has abused its discretion." (citation omitted)); <u>see also</u> <u>Briceño v. Bryden Invs., Ltd.</u>, 973 So. 2d 614, 616 (Fla. 3d DCA 2008) ("A trial court has wide discretion to grant or deny a temporary injunction and an appellate court will not interfere with the exercise of such discretion unless the party challenging the grant or denial clearly shows an abuse of that discretion."(quoting <u>Perry & Co. v. First Sec.</u>

---

injunction, that order is also properly on review.  <u>Panama City Gen. P'ship v. Godfrey Panama City Inv., LLC</u>, 109 So. 3d 291, 291 (Fla. 1st DCA 2013).

13

Ins. Underwriters, Inc., 654 So. 2d 671, 671 (Fla. 3d DCA 1995))). "An appellant who challenges the trial court's order on a motion for temporary injunction has a heavy burden; the trial court's ruling is presumed to be correct and can only be reversed where it is clear the court abused its discretion." Atomic Tattoos, LLC v. Morgan, 45 So. 3d 63, 64 (Fla. 2d DCA 2010).

Analysis

To obtain a temporary injunction, a party must establish "(1) a substantial likelihood of success on the merits, (2) the unavailability of an adequate remedy at law, (3) irreparable harm absent entry of an injunction, and (4) that the injunction would serve the public interest." Florigrown, LLC, 317 So. 3d at 1110.[6] Relevant here, section 542.335(1)(j), Florida Statutes, provides that a court shall enforce a valid "restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions." See also Ansaarie v. First Coast Cardiovascular Inst., P.A., 252 So. 3d 287, 290 (Fla. 1st DCA 2018) ("A temporary injunction is an available remedy when a party establishes that it has a valid, enforceable restrictive covenant that was violated."). Further, "[t]he violation

---

[6] We affirm without discussion Dr. Alonso's challenge that the elements for a temporary injunction were not satisfied here.

14

of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." § 542.335(1)(j).

To be enforceable, a restrictive covenant must be reasonable with regard to "time, area, and line of business" and "set forth in a writing signed by the person against whom enforcement is sought." § 542.335(1)(a). Additionally, "[i]n Florida, a contract providing restrictions on competition must involve a legitimate business interest as defined by statute to be enforceable." White, 226 So. 3d at 779; see § 542.335(1)(b), Fla. Stat. (stating that "[t]he person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant" and providing non-exhaustive list of legitimate business interests). "[T]he determination of whether an activity qualifies as a protected legitimate business interest under the statute is inherently a factual inquiry, which is heavily industry—and context-specific." White, 226 So. 3d at 786. A party seeking a temporary injunction also must "plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction." § 542.335(1)(c). Once a party establishes a prima facie case that the restriction is reasonably necessary, "the person opposing

15

enforcement has the burden of establishing that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests." Id. Finally, the statute provides that courts must construe restrictive covenants "in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement," and without application of "any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract." § 542.335(1)(h).

On appeal, Dr. Alonso argues that the trial court erred in finding that the non-compete provision was valid and enforceable. Specifically, Dr. Alonso asserts that the non-compete provision expired before he began working for Driven Research and that the trial court abused its discretion in finding that the non-compete provision was supported by a legitimate business interest. Neither of Dr. Alonso's arguments is persuasive.

Dr. Alonso contends that because the Agreement and its Amendments expired on December 31, 2017, section 12.1's non-compete provision ended on December 31, 2019, which was "two (2) years (the 'Post-Term Restrictive Period') from the date of expiration or termination of the Term of this Agreement." Thus, Dr. Alonso claims he was free to begin working for Driven

16

Research, unrestrained by the non-compete provision, on January 2, 2020, two months after his November 1, 2019, termination from IDR. Given the plain language of the Agreement, we disagree with Dr. Alonso.

"This Court has held that post-termination restrictions expire upon the termination of an agreement for a specific term, even if an employee remains an at-will employee after the term of the written agreement expires." Zupnik v. All Fla. Paper, Inc., 997 So. 2d 1234, 1238 (Fla. 3d DCA 2008). This principle applies where the restrictive covenant provides that it applies following termination of employment and the parties' agreement does not expressly provide that the covenant survives the expiration of the employment contract. See id. (holding that where non-compete provision applied "during the [two-year] Employment Term and within twelve (12) months from the termination of said term" and parties' agreement did not "contain language specifying that the restrictive covenants would continue beyond the two-year term if [employee]" continued working, non-compete provision expired at end of two-year employment term even where employee continued working beyond that point); Sanz v. R.T. Aerospace Corp., 650 So. 2d 1057, 1059 (Fla. 3d DCA 1995) (reversing preliminary injunction in favor of employer where restrictive covenants applied "during the existence of [employee's] employment and for a period of twenty-four (24) months

17

immediately following the termination of his employment" and employee continued to work for employer after employment agreement expired because covenants "were only applicable if [employee] terminated his employment . . . during the life of the written agreement"). If, however, an employment agreement contains express language showing that the parties intend for a non-compete provision to survive the expiration or termination of the agreement, the provision remains effective where the agreement expires but the employment relationship continues. See St. Johns Inv. Mgmt. Co. v. Albaneze, 22 So. 3d 728, 732 (Fla. 1st DCA 2009) (finding that language in contract showed that parties intended non-compete provision to survive employee's post-term employment); Brenner v. Barco Chems. Div., Inc., 209 So. 2d 277, 278 (Fla. 3d DCA 1968) (affirming decree restraining employee who resigned 18 months after contract expired where non-compete provision applied during term of employment "and for a period of one year immediately following the Expiration or termination of such employment by mutual agreement" and contract provided that it would govern parties' relations if employee was retained by employer after expiration of contract); Sanz, 650 So. 2d at 1059 (rejecting appellee's argument that non-compete covenants survived expiration of agreement because "the fact that the noncompete clauses were independent of other covenants in the agreement does not

18

mean that they survived the expiration of the contract *in the absence of an express provision to that effect*" (emphasis added)); cf. <u>Century 21 Real Est. of S. Fla., Inc. v. Braun & May Realty, Inc.</u>, 706 So. 2d 878, 879 (Fla. 3d DCA 1997) (holding that termination triggered provision in agreement requiring commission payments even though agreement had expired because "the agreements provided that the parties continued to be bound by the agreement terms"). Here, section 12.4 of the Agreement provides as follows: "*Survival*. The covenants of this Section 12 shall survive the expiration or termination of this Agreement." Given the above principles, we conclude that the express language of section 12.4 shows that the parties intended the non-compete provision contained in section 12.1 to remain effective after the Agreement's expiration.[7] Thus, the non-compete provision survived the December 31, 2017, expiration and was triggered upon IDR's termination of Dr. Alonso's employment on November 19, 2019.

Dr. Alonso insists that this Court's opinion in <u>Brenner</u>, 209 So. 2d at 277, holds that in order for a non-compete provision to survive post-term, the contract must also expressly state that its terms apply if the employee

---

[7] Dr. Alonso asserts that section 12.4 applies only to sections 12.2 and 12.3, serving to "extend out" those sections, which do not contain two-year limitations. Section 12.4, however, states that it applies to "[t]he covenants of this Section."

continues to work for the employer after expiration of the contract. <u>Brenner</u> makes no such holding. In <u>Brenner</u>, the parties' contract "provided for non competition by Brenner 'during the term of his employment by company and for a period of one year immediately following the Expiration or termination of such employment by mutual agreement.'" <u>Id.</u> at 278. The contract also provided that "[i]n case the services of SALES MANAGER (Brenner) are retained by COMPANY after the expiration of this contract without formal contract, it is hereby mutually agreed that the terms of this contract shall continue to govern the relations between COMPANY and SALES MANAGER." <u>Id.</u> Brenner continued to work for his employer after the contract between the parties expired, but eventually resigned. This Court affirmed the trial court's decree restraining him from competing with his former employer for one year after his resignation. In reaching its holding, <u>Brenner</u> contains little analysis, only distinguishing between the non-compete at issue, which applied following the *expiration* or termination of employment, with the non-compete at issue in <u>Storz Broadcasting Co. v. Courtney</u>, 178 So. 2d 40, 41 n.2 (Fla. 3d DCA 1965), which applied "upon termination of his employment with the Company." This Court's conclusion did not rest on a finding that where a contract, like here, expressly provides that the non-compete covenants survive expiration or termination, the

20

contract must also state that its terms apply after expiration if the employee continues to work for the employer. Even so, it is clear based on the language of the Agreement that the parties contemplated continued employment by Dr. Alonso. Section 12.4 states that the covenants in section 12 "survive the expiration or termination of this Agreement." Section 12.1, in contrast, uses the phrase "termination of the *Term* of this Agreement." (emphasis added). Termination of the Term of the Agreement is December 31, 2017. If, in the survival provision, section 12.4, the parties had intended the covenants to survive only as measured from December 31, 2017, they would have used the phrase, "termination of the Term of this Agreement," as they did in section 12.1. See Beach Towing Servs., Inc. v. Sunset Land Assocs., LLC, 278 So. 3d 857, 861 (Fla. 3d DCA 2019) (stating that "[a]s a general proposition, the use of different language in different contractual provisions strongly implies that a different meaning was intended" (quoting Fowler v. Gartner, 89 So. 3d 1047, 1048 (Fla. 3d DCA 2012))). Moreover, the use of the word termination in section 12.4 refers to section 11 of the Agreement, entitled "*Termination*." Notably, section 11.1 states that IDR "shall be entitled to terminate this Agreement, upon written notice to Physician, *at any time* for any or no reason." (emphasis added). Additionally, section 11.3, entitled, "*Effects of Termination*" includes a provision that "all

21

duties and obligations of Physician intended to survive termination shall survive (including Physician's obligations under Sections . . . 12 . . . of this Agreement)." Giving effect to all portions of the Agreement and reading it as a whole, as we must, see Massey Servs., Inc. v. Sanders, 312 So. 3d 209, 214 (Fla. 5th DCA 2021); Anarkali Boutique, Inc. v. Ortiz, 104 So. 3d 1202, 1205–06 (Fla. 4th DCA 2012), we find that the Agreement "contemplated a situation wherein [Dr. Alonso] remained a[n] [IDR] employee in the absence of a written agreement." St. Johns, 22 So. 3d at 733.

Dr. Alonso contends that even if the non-compete provision was in effect on January 2, 2020, the trial court abused its discretion in finding that a legitimate business interest justified the non-compete provision.[8] Section

---

[8] Dr. Alonso briefly argues that IDR failed to present evidence that the non-compete provision was reasonable in area and line of business. See § 542.335(1), Fla. Stat. He asserts that as a result, IDR failed to establish a prima facie case and the burden never shifted to him to establish that the provision was overbroad or unreasonable under section 542.335(1)(c). A claim that IDR did not establish a prima facie case is a challenge to the sufficiency of the evidence. Dr. Alonso did not argue below that IDR failed to make a prima facie case that the provision was reasonable as to area and line of business, and we will not address the argument for the first time on review. F.B. v. State, 852 So. 2d 226, 229 (Fla. 2003) ("In general, to raise a claimed error on appeal, a litigant must object at trial when the alleged error occurs. 'Furthermore, in order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.'" (citation omitted) (quoting Steinhorst v. State, 412 So. 2d 332, 338 (Fla.1982))). Although the sufficiency of the evidence may be raised on appeal absent preservation by objection or motion below under Florida Rule of Civil Procedure 1.530(e), that rule applies to judgments

22

542.335(1)(b) sets forth a non-exhaustive list of legitimate business interests that may justify the restrictive covenant sought to be enforced. See White, 226 So. 3d at 783 ("The statute defines legitimate business interests through a non-exhaustive list."). Here, the trial court found that IDR demonstrated a legitimate business interest in "substantial relationships with specific prospective or existing customers." See § 542.335(1)(b)(3) (stating that "legitimate business interests" includes "[s]ubstantial relationships with specific prospective or existing customers, patients, or clients"). Dr. Alonso argues that because he testified that he did not have access to a patient database at IDR, and Trinidad testified that the names of patients are confidential and patients are referred to by initials, there was no evidence presented below to prove the existence of a substantial relationship with *identifiable* "specific prospective or existing customers, patients, or clients." This argument is without merit. First, the trial court did not find that IDR proved the existence of a legitimate business interest in substantial relationships with specific prospective or existing patients, but rather,

---

entered after civil non-jury trials. See Winchel v. PennyMac Corp., 222 So. 3d 639, 644 (Fla. 2d DCA 2017) (stating that under plain language of rule 1.530(e) "when there has been a nonjury trial and the appellate issue is the sufficiency of the evidence to support the judgment, the failure to object based on the insufficiency of the evidence will not bar raising that issue on appeal").

23

customers. The finding that IDR had substantial relationships with existing customers was supported by Trinidad's testimony that Dr. Alonso had mailed a letter to IDR's client requesting work.[9] Dr. Alonso acknowledged on cross-examination that he sent the letter. "'[T]he right to prohibit the direct solicitation of existing customers' is a legitimate business interest, and a covenant not to compete which includes a non-solicitation clause is breached when a former employee directly solicits customers of his former employer." Atomic Tattoos, LLC, 45 So. 3d at 65 (quoting Dyer v. Pioneer Concepts, Inc., 667 So. 2d 961, 964 (Fla. 2d DCA 1996)). There is also no requirement that IDR present evidence of a particular, identifiable existing customer, client, or patient with which it has a substantial relationship. See Ansaarie, 252 So. 3d at 290–91 (holding that trial court properly found hospital demonstrated legitimate business interest in its substantial relationships with existing patients when it put forth evidence that "a number of its patients had recently requested to transfer their files to [former employee/doctor]" and distinguishing its prior holding in University of Florida, Board of Trustees v. Sanal, 837 So. 2d 512, 516 (Fla. 1st DCA 2003), that a legitimate business relationship with a *prospective* patient "must be, in addition to 'substantial,' one with a particular, identifiable, individual").

---

[9] The parties use the terms "client" and "customer" interchangeably.

Because the non-compete provision was in effect when Dr. Alonso began working for Driven Research, and IDR established as least one legitimate business interest,[10] the trial court did not err in finding the non-compete provision valid and enforceable.[11]

Dr. Alonso also argues that the temporary injunction is facially deficient because it does not set forth the act or acts from which he is restrained as required by Florida Rule of Civil Procedure 1.610(c). On this point, we agree with Alonso. Rule 1.610(c) provides that an injunction "shall describe in reasonable detail the act or acts restrained without reference to a pleading or another document." "A temporary injunction requires strict compliance with Florida Rule of Civil Procedure 1.610." Coscia v. Old Fla. Plantation,

---

[10] Although Dr. Alonso also challenges on appeal the trial court's finding that the non-compete provision was supported by legitimate business interests in valuable confidential business information and specialized training, we need not address these arguments because section 542.335(1)(b) requires only that the restrictive covenant be supported by "one or more legitimate business interests."

[11] We note that IDR was required under section 542.335(1)(c) to also "plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction." Here, the trial court found that the non-compete provision was reasonably necessary to protect IDR's legitimate business interests. On appeal, Dr. Alonso does not challenge the trial court's finding that the non-compete provision was "reasonably necessary," other than to claim that the burden to establish that the restraint is "overbroad, overlong, or otherwise not reasonably necessary" never shifted to him. See supra note 7.

Ltd., 828 So. 2d 488, 490 (Fla. 2d DCA 2002). With regard to prohibited conduct, "[o]ne against whom an injunction is directed should not be left in doubt as to what he is required to do."[12] Clark v. Allied Assocs., Inc., 477 So. 2d 656, 658 (Fla. 5th DCA 1985). Here, the trial court failed to set forth in reasonable detail the act or acts Dr. Alonso is enjoined from performing. Indeed, the temporary injunction does not actually enjoin *any activity* by Dr. Alonso. IDR responds that Dr. Alonso knows what conduct is impermissible because IDR "sought only to enjoin Dr. Alonso from being involved in clinical research trials related to dermatology." In support of its argument, IDR cites to Trinidad's testimony at the evidentiary hearing.[13] But rule 1.610(c)

---

[12] Relatedly, an injunction may not be enforced by contempt where its terms are not clear and definite. See Osmo Tec SACV Co. v. Crane Env't, Inc., 884 So. 2d 324, 326–27 (Fla. 2d DCA 2004) ("Corollary to the requirement that enjoined acts be described 'in reasonable detail' is the rule that a contempt sanction may not be imposed for the violation of an injunction unless the purportedly contemptuous act clearly contravenes the injunction. Moreover, '[a]n essential finding to support contempt is the party's intent to violate the court order at issue.'" (citation omitted) (quoting Merrill Lynch Tr. Co. v. Alzheimer's Lifeliners Ass'n, 832 So. 2d 948, 954 (Fla. 2d DCA 2002))); see also Penzell v. M & M Constr. Grp. Corp., 915 So. 2d 194, 196 (Fla. 3d DCA 2005) ("When an injunction is sufficiently clear and definite to apprise the parties of the court's mandate, the parties must comply or face the penalty of contempt."); Tarantola v. Henghold, 233 So. 3d 508, 510 (Fla. 1st DCA 2017).

[13] On direct examination, Trinidad testified as follows:

Q: As I – ma'am, as I read your agreement, it only prohibits him related to dermatological studies; is that correct?
A: Yes.

26

expressly prohibits "reference to a pleading or *another document*" to determine the requirements of the temporary injunction. (emphasis added). Moreover, IDR's assertion is contradicted by its motion for emergency injunctive relief, which alleged that Dr. Alonso breached the non-compete provision when he competed with IDR and solicited IDR's customers, and sought a temporary injunction enjoining, among other things, Dr. Alonso from "attempt[ting] to solicit or solicit or otherwise contact the patients, customers or clients (including any pharmaceutical companies or manufactures [sic] of Plaintiff."[14]

---

Q: So if he wants to do a COVID-19 one, he's free to do that, isn't he?
A: Yes.
Q: He -- if he wants to do -- get a Botox practice going, he's free to do that, correct?
A: Yes.
Q: There's only a very limited restriction in what he is not allowed to do and that is basically to do dermatological studies; is that correct?
MR. CLANCY: Objection --
A: To do clinical trials in dermatology.

[14] In pertinent part, IDR sought to enjoin Dr. Alonso from the following acts:

3. Enjoin Defendant for a period of two (2) years not to directly or indirectly, on Defendant's own behalf or as a principal partner, member, shareholder, officer, employee, agent, consultant, contractor, physician, director or trustee of any person partnership, firm association, corporation, hospital, clinic or other medical facility, engage, perform, conduct, promote, market, exploit indirectly performs, conducts, promotes, markets, exploits or engage in or is otherwise involved in, clinical research or trials

Accordingly, we reverse the temporary injunction in part with directions to the trial court to "describe in reasonable detail the act or acts restrained." Fla. R. Civ. P. 1.610(c); see also Angelino v. Santa Barbara Enters., LLC, 2 So. 3d 1100, 1104 (Fla. 3d DCA 2009) (finding temporary injunction defective under rule 1.610(c) where temporary injunction enjoined plaintiff from "competing against [defendant]" and "usurping [defendant's] business opportunities, customers, and suppliers"); Dickerson v. Senior Home Care, Inc., 181 So. 3d 1228, 1229 (Fla. 5th DCA 2015) (reversing temporary injunction as facially deficient and remanding for further proceedings where, among other things, "the trial court's order does not comply with rule 1.610(c) because it simply enjoins Appellants 'from violating their Non–Compete, Non–Disclosure, Non–Solicitation Agreements'"). We otherwise affirm the temporary injunction entered below.

Affirmed in part, reversed in part, and remanded.

---

relating to dermatological including, without limitations, dermatological products or procedures, anywhere within five (5) mile radius of the premises provided by the Plaintiff for the operation of Defendant's business, attempt to solicit or solicit or otherwise contact the patients, customers or clients (including any pharmaceutical companies or manufactures) of Plaintiff or other physician practices managed by Plaintiff or use patient or customer lists developed or owned by Plaintiff or other physicians practices managed by Plaintiff.